IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
September 9, 2013
Lyle W. Cayce
Clerk

No. 12-40165

JESSICA CUELLAR,

Plaintiff-Appellant,

v.

KEPPEL AMFELS, L.L.C.,

Defendant-Appellee.

United States District Court
Southern District of Texas
FILED
OCT - 7 2013
David J. Bradley, Clerk of Court

B-10-CV-191

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, SMITH, and ELROD, Circuit Judges.

PER CURIAM:

Jessica Cuellar alleges that her secondary employer, Keppel Amfels, L.L.C. ("Keppel Amfels"), violated § 2615(a)(1) of the Family Medical Leave Act ("FMLA") by discouraging her primary employer, staffing agency Perma-Temp Personnel Services, Inc. ("Perma-Temp"), from seeking her reinstatement after an FMLA-authorized maternity leave. The district court granted summary judgment in favor of Keppel Amfels. Because Cuellar fails to present a genuine issue of material fact, we AFFIRM.

I.

Keppel Amfels builds and repairs offshore drilling platforms and marine vessels at the Port of Brownsville, Texas. It relies on lease-labor and temporary

No. 12-40165

staffing agencies, including Perma-Temp, to staff about half of its local work assignments. Although these agencies fill "temporary" positions, some placements last for several years.

Keppel Amfels and Perma-Temp started working together in about 1996. According to Cuellar, the entities developed a course-of-dealing over the years: "When an opening at Keppel Amfels arose, Perma-Temp would select three to four candidates from its pool of available workers and send their resumes to Keppel Amfels. Keppel Amfels would use those resumes to decide which candidates it would interview and which candidate would fill the opening." Cuellar emphasizes that Perma-Temp never offered to send a worker to fill a new or replacement position *unless and until* it received a request from Keppel Amfels.

When a Material Information Clerk assignment opened in June 2007, Perma-Temp recommended, and Keppel Amfels hired, Cuellar. Cuellar became pregnant at some time during her employment and notified both Perma-Temp and Keppel Amfels that she would require medical leave following the birth of her child. Cuellar went into pre-term labor on August 17, 2008, and gave birth a few days later.

Cuellar alleges that, on the same day that she informed Keppel Amfels that she had been admitted to the hospital for pre-term labor, Cuellar's supervisor requested a replacement employee. The supervisor noted on a personnel requisition form that the reason for the request was to "temporarily fill in for employee out on maternity leave and permanently replace employee retiring at end of year." Keppel Amfels selected Geralyn Perez, the daughter of a Keppel Amfels Project Manager, for the position. According to Perez, a

No. 12-40165

Keppel Amfels supervisor told her that "somebody was on maternity leave and [Perez] was taking her place." Perez started on August 20, 2008.

Cuellar further alleges that, three days into her maternity leave, Keppel Amfels informed Perma-Temp that it had terminated her assignment. Cuellar bases this factual assertion on a note in Perma-Temp's database, which states: "On 8/21/08 Ben Sandoval [of Keppel Amfels's human resources department] just [called] to let us know that he is ending [Cuellar's] job as of today and also stated that she is able to be re-hired." Sandoval does not remember making this call to Perma-Temp and, in any event, disputes that he would have used the term "ending" regarding Cuellar's position. Sandoval concedes, however, that he probably told Perma-Temp that Keppel Amfels intended to replace Cuellar with another employee. Although Cuellar was eligible for re-hire, meaning that she was not terminated for cause, Keppel Amfels did not hold any position open for her.

Unaware of these events, Cuellar called her supervisor at Keppel Amfels when she was released to return to work. Cuellar's supervisor transferred her to Sandoval in Keppel Amfels's human resources department. According to Cuellar, Sandoval told her that Keppel Amfels was "doing fine without her" and that the company would call her if there was another opening in her department. Cuellar then called Perma-Temp and relayed her conversation with Sandoval; she claims that a Perma-Temp employee encouraged her to seek unemployment benefits, which she did. Perma-Temp did not refer Cuellar back to Keppel Amfels or ask Keppel Amfels to reinstate her to the Material Information Clerk position.

Cuellar filed suit against Keppel Amfels, asserting that Keppel Amfels (1)

3

No. 12-40165

interfered with her FMLA rights by "convincing" Perma-Temp not to seek her reinstatement in violation of 29 U.S.C. § 2615(a)(1), and (2) retaliated against her based on her exercise of FMLA rights in violation of § 2615(a)(2). On summary judgment, the district court "merged" Cuellar's claims and analyzed them both pursuant to the *McDonnell-Douglas* burden-shifting regime. It held that Cuellar stated a *prima facie* case, but concluded that both of her claims failed because there was "no evidence in the record that [Keppel] Amfels acted with a discriminatory animus by terminating Cuellar's assignment." Accordingly, the district court granted Keppel Amfels's motion for summary judgment and dismissed Cuellar's claims against Keppel Amfels with prejudice.[1] Cuellar appeals only the dismissal of her § 2615(a)(1) "interference" claim.[2]

II.

We review *de novo* a district court's grant of summary judgment, applying the same standard as the district court. *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001) (citation omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."

---

[1] For the same reason, the district court denied Cuellar's cross motion for summary judgment as to her interference and retaliation claims.

[2] Cuellar does not challenge the district court's determinations that: (1) Cuellar was subject to joint employment, with Perma-Temp as her primary employer and Keppel Amfels as her secondary employer; (2) Keppel Amfels is not liable for failure to reinstate Cuellar to her position because Perma-Temp did not refer her to Keppel Amfels after the birth of her child; and (3) Keppel Amfels did not act with discriminatory animus.

4

No. 12-40165

*Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). "On cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford*, 264 F.3d at 498 (citing *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir. 1994)).[3]

## III.

Congress enacted the FMLA to permit eligible employees "to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (citing 29 U.S.C. § 2601(b)(2)). The statute guarantees eligible employees a total of twelve weeks of leave in a one-year period when the leave relates to the birth of a child. 29 U.S.C. § 2612(a)(1). Upon the employee's timely return, the employer must reinstate the employee "to the same position as previously held or a comparable position with equivalent pay, benefits, and working conditions." *Smith v. E. Baton Rouge Parish Sch. Bd.*, 453 F.3d 650, 651 (5th Cir. 2006) (citing 29 U.S.C. § 2614(a)(1)).

---

[3] As a threshold matter, we address Keppel Amfels's argument that Cuellar waived her right to appeal because she cited to an Addendum of Undisputed Facts, rather than the underlying record evidence. We disagree. The underlying evidence appears in the record and is identifiable based on Cuellar's citations in the Addendum of Disputed Facts. While this citation method is technically improper, it is not so egregious as to merit waiver. *See United States v. Stewart*, 466 F. App'x 340, 341 (5th Cir. 2012) (concluding that a plaintiff abandoned an issue when his brief contained "no citations to the record in support of either his statement of the facts or his legal argument"); *Hernandez v. Grubbs*, 82 F. App'x 866, 867 (5th Cir. 2003) (dismissing an appeal as frivolous when the plaintiff wholly failed to provide references to the page number of the record to support statements of fact).

No. 12-40165

Where two businesses "exercise some control over the work or working conditions of the employee, the businesses may be joint employers under FMLA." 29 C.F.R. § 825.106(a). Under the relevant regulations, a joint employer's obligations under the FMLA depend on whether it is the "primary" or "secondary" employer. *Id.* § 825.106(c). Where an employee obtains employment through a temporary placement agency, "the placement agency most commonly would be the primary employer." *Id.* Applying the regulations here, we conclude that Perma-Temp was Cuellar's primary employer, and Keppel Amfels was her secondary employer.

Only the primary employer is responsible for providing FMLA leave. *Id.* § 825.106(c). In addition, "[j]ob restoration is the primary responsibility of the primary employer." *Id.* § 825.106(e). A secondary employer bears only a conditional burden: it "is responsible for accepting an employee returning from FMLA leave . . . *if* [it] continues to utilize an employee from the temporary placement agency, and the agency chooses to place the employee with the secondary employer." *Id.* (emphasis added).

A secondary employer is not without independent FMLA obligations, however. In addition to its conditional job-restoration duty, a secondary employer is "*also* responsible for compliance with the prohibited acts provisions with respect to its jointly employed employees . . . ." *Id.* (citing § 825.220(a)) (emphasis added). The "prohibited acts provisions" appear in § 2615, and include two relevant categories of illegal behavior:

(1) Exercise of rights
    It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
(2) Discrimination

6

> It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

29 U.S.C. § 2615(a). The regulations provide that "interfering with" the exercise of an employee's rights "would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave" and "manipulation by a covered employer to avoid responsibilities under FMLA." 29 C.F.R. § 825.220(b). The comments to the final rule implementing the FMLA's joint-employment regulations explain:

> [A]lthough job restoration is the responsibility of the primary employer, the purposes of the Act would be thwarted if the secondary employer is able to prevent an employee from returning to employment. Accordingly, the regulations are revised to provide that the secondary employer is responsible for accepting an employee returning from leave in place of any replacement employee. Furthermore, the secondary employer (client employer) must observe FMLA's prohibitions in § 105(a)(1), including the prohibition against interfering with, restraining, or denying the exercise of or attempt to exercise any rights provided under the FMLA. *It would be an unlawful practice, in the Department's view, if a secondary employer interfered with or attempted to restrain efforts by the primary (temporary help) employer to restore an employee who was returning from FMLA leave to his or her previous position of employment with the secondary (client) employer (where the primary (temporary help) employer is still furnishing the same services to the secondary (client) employer).* Because the secondary employer is acting in the interest of the primary employer within the meaning of § 101(4)(A)(ii)(I) of the Act, the secondary employer has these responsibilities, regardless of the number of employees employed.

The Family and Medical Leave Act of 1993, 60 Fed. Reg. 2180, 2183 (Jan. 6, 1995) (codified at 29 C.F.R. § 825) (emphasis added). Thus, as *Amici* note, that a primary employer bears the main responsibility for job restoration "does not

No. 12-40165

enable secondary client employers to avoid responsibility for reinstating temporary employees after FMLA leave." Just as a primary employer may not interfere with, or retaliate on account of, an employee's exercise of FMLA rights, neither may a secondary employer.

Here, Cuellar alleged that Keppel Amfels, her secondary employer, violated the first of the prohibited acts provisions (§ 2615(a)(1)) by discouraging Perma-Temp from seeking her reinstatement after her maternity leave. The district court dismissed Cuellar's claim on the ground that she failed to demonstrate a fact issue that Keppel Amfels acted with discriminatory intent. On appeal, the parties dispute whether: (1) Cuellar must prove intent to recover pursuant to § 2615(a)(1), and (2) if not, Cuellar can demonstrate a genuine issue of material fact on the remaining elements of her interference claim. For the purposes of this appeal we assume, *arguendo*, that intent is not an element of Cuellar's § 2615(a)(1) claim and proceed directly to the second issue.

To succeed on her § 2615(a)(1) claim, Cuellar must at least show that Keppel Amfels interfered with, restrained, or denied her exercise or attempt to exercise FMLA rights, and that the violation prejudiced her. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). According to Cuellar, "Keppel Amfels'[s] actions . . . convinced both Perma-Temp and Cuellar it was fruitless to refer her back to Keppel Amfels for reinstatement." She emphasizes that the long-standing course of dealing between her employers was that Perma-Temp "never referred workers without a request from Keppel Amfels." And, "Keppel Amfels had and exercised the authority to decide whether or not Cuellar would be allowed to return to work there." Thus, Cuellar asserts that by replacing her, telling Perma-Temp that her employment was terminated, and

No. 12-40165

telling her, upon her return from leave, that she no longer had a position at Keppel Amfels, Keppel Amfels "prevented Cuellar from exercising fully her right to be reinstated."[4]

Keppel Amfels argues that these incidents cannot constitute "interference," as they would extend FMLA entitlements past their statutory and regulatory limits in the joint-employment context. We agree. The regulations permit, even expect, a secondary employer to rely on a primary employer to provide FMLA leave: a temporary employee's relationship with a secondary employer *may end and never be restored* without any violation of the FMLA. 29 C.F.R. § 825.106(e). As explained above, the "primary responsibility" for job restoration falls on the primary employer; a secondary employer need only accept an employee returning from FMLA leave if it "continues to utilize an employee from the temporary placement agency, *and the agency chooses to place the employee with the secondary employer*." *Id.* (emphasis added). Thus, Keppel Amfels acted within its rights to replace Cuellar temporarily, and had no obligation to reinstate her absent a request from Perma-Temp. The statute and regulations demonstrate that "interference" requires something more to create liability against a secondary employer.

There is nothing more here. That Perma-Temp typically relied on Keppel Amfels to initiate a request for a temporary employee to fill a new position cannot create a fact issue, as it says nothing about the entities' expectations

---

[4] According to Cuellar, Perma-Temp believed that she would return to Keppel Amfels until Sandoval, a Keppel Amfels employee, indicated that Cuellar's assignment was over. Perma-Temp took Sandoval's communication to mean that Cuellar would need to apply and be hired for a new position before she could return to Keppel Amfels, making reinstatement to the same position impossible. Cuellar contends that Keppel Amfels "confirmed" this message when it told her that her position had been filled.

9

No. 12-40165

when confronted with an employee's return from FMLA leave. Although Cuellar frames Keppel Amfels's actions as "convincing" Perma-Temp not to seek her reinstatement, the allegations simply do not support that inference.

Ultimately, we agree with Keppel Amfels that to hold it liable on these facts would be to place it in the position of a primary employer and, therefore, create an employment relationship that did not exist prior to Cuellar's leave. As a district court addressing similar facts explained:

> The plain language of the FMLA provides that no employee will be entitled to any position to which the employee would not have been entitled had leave not been taken. *See* 29 U.S.C. § 2614(a)(3). As set forth above, there is no dispute that Plaintiff was an employee leased from RAS to Moore Wallace. Plaintiff's insistence that Moore Wallace reinstate her directly, regardless of the consent of RAS, would require that Moore Wallace hire her as a direct employee, thereby creating an employment relationship that did not exist prior to Plaintiff taking leave. In sum, requiring Moore Wallace to reinstate Plaintiff on its own is contrary to the plain language of the statute.

*Stierl v. Ryan Alt. Staffing, Inc.*, No. 4:06-CV-1751, 2007 WL 1306601, at *5 (N.D. Ohio May 3, 2007). Because Cuellar fails to create a fact issue that Keppel Amfels's actions went beyond what the relevant FMLA statutory and regulatory provisions allow, her claim fails regardless of whether intent is an element of her claim. For this reason, we AFFIRM.

No. 12-40165

JENNIFER WALKER ELROD, Circuit Judge, specially concurring:

Although we affirm the district court's decision on a separate ground, the issue on which the district court ruled and that the parties extensively briefed on appeal is whether a plaintiff must prove that the defendant acted with discriminatory intent to succeed on a claim for "interference" with an FMLA entitlement pursuant to § 2615(a)(1). Keppel Amfels would have us answer this question based on the label that we use to describe the claim: specifically, whether we call it "prescriptive" or "proscriptive." In my view, however, these labels have become more distracting than helpful, and have resulted in unnecessary confusion. I write separately to emphasize that, under our existing precedent, the critical inquiry is not what name we use to describe a plaintiff's § 2615(a)(1) claim; rather, it is whether the claim, by its nature, arises from the denial of a substantive FMLA entitlement.

We have used the terms "prescriptive" and "proscriptive" to describe the FMLA's prohibited acts provisions.[1] *See, e.g., Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008); *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). In general, the term "prescriptive" refers to the substantive FMLA rights an employer owes its employees. *See Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 763 (5th Cir. 2001). An employer's "proscriptive" obligations, on the other hand, bar it from "penalizing an employee for the exercise of FMLA rights." *Id.* at 763. Unfortunately, however, our use

---

[1] The First and Fourth Circuits also use these terms. *See, e.g., Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159–60 (1st Cir. 1998); *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006).

11

No. 12-40165

of these terms is somewhat inconsistent across cases.[2] Thus, while the proscriptive and prescriptive labels have utility—particularly in the context of the individual cases in which they appear—it is difficult to distinguish FMLA claims based on these terms alone.

More important than the labels that we have used is the substantive analysis that we have applied in evaluating a plaintiff's FMLA claims.[3] Review

---

[2] At times, we have classified claims pursuant to § 2615(a)(1) as "prescriptive" and those pursuant to § 2615(a)(2) as "proscriptive." *See, e.g., Haley.* 391 F.3d at 649 ("claims for violations of [substantive-FMLA] rights invoke entitlement or interference theories and are brought under § 2615(a)(1)," whereas "[c]laims for violations of these rights are brought under § 2615(a)(2)"); *Williams v. Lyondell-Citgo Ref. Co., Ltd.*, 247 F. App'x 466, 468 n.1 (5th Cir. 2007) (The FMLA "has one provision granting prescriptive or substantive rights, and one granting proscriptive rights. *See* § 29 U.S.C. 2615(a)(1) (granting prescriptive rights); 29 U.S.C. § 2615(a)(2) (granting proscriptive rights).").

At other times, however, we have described different substantive provisions of the FMLA—such as 29 U.S.C. § 2612(a)(1)(D)'s requirement that an employer allow for up to twelve weeks of leave—as "prescriptive," and the prohibitions in *both* § 2615(a)(1) and § 2615(a)(2) as "proscriptive." *See, e.g., Elsensohn*, 530 F.3d at 372; *Hunt*, 277 F.3d at 763.

Moreover, we have sometimes used the "interference" and "retaliation" labels favored by our sister circuits to describe a plaintiff's FMLA claims. *See, e.g., Bell v. Dallas Cnty.*, 432 F. App'x 330, 334 (5th Cir. 2011); *Baham v. McLane Foodservice, Inc.*, 431 F. App'x 345, 347 n.1 (5th Cir. 2011); *see also Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006) (calling claims under the two prongs of § 2615(a) "interference" and "retaliation" claims, respectively); *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 594 F.3d 476, 482 (6th Cir. 2010) (same); *Kauffman v. Fed. Exp. Corp.*, 426 F.3d 880, 884 (7th Cir. 2005) (same); *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002) (same); *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1206 n.9 (11th Cir. 2001) ("While the FMLA does not clearly delineate these two claims with the labels 'interference' and 'retaliation,' those are the labels courts have used in describing an employee's claims under the Act." (citing *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1352 (11th Cir. 2000))).

[3] *Cf. Mellen v. Trustees of Boston Univ.*, 504 F.3d 21, 26–27 (1st Cir. 2007) ("[W]hat matters is 'whether the plaintiff is, at bottom, claiming that the employer denied his or her substantive rights under the FMLA or that the employer retaliated against him or her for having exercised or attempted to exercise those rights.'" (quoting *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 332 (1st Cir. 2005))).

No. 12-40165

of the relevant case law reveals an underlying principle: whatever they are called, claims that arise from the deprivation of an FMLA entitlement do not require a showing of discriminatory intent, whereas claims that arise from alleged retaliation for an employee's exercise of FMLA rights *do*. *Nero* and *Chaffin* illustrate this principle in action. *Compare Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999), *with Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, 319 (5th Cir. 1999),[4] *partially abrogated on other grounds by Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–49 (2000).

In *Nero*, a plaintiff argued that his termination during FMLA leave constituted an unlawful interference with his right to reinstatement. 167 F.3d at 927. The defendant attempted to pigeonhole the plaintiff's claim as one for retaliation, arguing that Nero could not recover because there was no evidence of intent. *Id.* at 926–27. But this reflected "a misunderstanding of Nero's claim." *Id.* at 927. "Nero argued repeatedly and clarified at trial that he is 'not saying he got fired because of taking the leave.' Rather, Nero argued consistently throughout trial that 'the crux of the claim [is that] he wasn't restored' to his job." *Id.* The court held that Nero need not prove intent: "Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, *regardless of the intent of the employer*." *Id.* (emphasis added) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159–60 (1st Cir. 1998)). The court declined "to consider further [the defendant's]

---

[4] It is worth noting that *Chaffin* is one of the many cases that articulates the prescriptive/proscriptive distinction between FMLA claims. The case attributes the requirement not to "interfere with, restrain, or deny the exercise of . . . any right" to § 2615(a)(2) rather than § 2615(a)(1), where it actually appears, making it difficult to determine which provision the court considered "proscriptive." *Chaffin*, 179 F.3d at 319 n.6.

No. 12-40165

immaterial argument" on intent and upheld a jury verdict on Nero's FMLA claim. *Id.*

In *Chaffin*, on the other hand, the plaintiff made "no claim that [the defendant] denied her a substantive entitlement under the FMLA. Rather, she contend[ed] that [the defendant] punished her for exercising her right under the FMLA to take leave." 179 F.3d at 319. The court imposed an intent requirement, holding that "when direct evidence of discrimination is lacking, the *McDonnell Douglas* organizational framework applies to claims that an employee was penalized for exercising rights guaranteed by the FMLA." *Id.* The court expressly noted that its decision did not "extend to alleged deprivations of substantive rights under the FMLA." *Id.* at 319 n.13. Ultimately, the plaintiff's claim failed because she could not counter the defendant's evidence of a legitimate, nondiscriminatory reason for her termination. *Id.* at 321.

Viewed together, these cases illustrate that a plaintiff need only prove intent when her claims arise out of alleged punishment for the exercise or attempt to exercise an FMLA right.[5] Other cases decided by this court reinforce the same principle. *See, e.g., Hunt*, 277 F.3d at 763–71 (analyzing a plaintiff's claim for failure to award an FMLA entitlement separately from her retaliation claim, imposing the *McDonnell Douglas* burden-shifting regime only in the context of the latter); *Mauder*, 446 F.3d at 579–85 (same). So do cases in our sister circuits. For example, the Tenth Circuit has explained, "[i]f an employer

---

[5] In my view, *Nero* and *Chaffin* are not in conflict, but rather address different sides of the FMLA coin. In any event, because *Nero* (decided on March 2, 1999) predates *Chaffin* (decided on June 22, 1999), we are bound by the rule of orderliness to follow *Nero* with respect to any irreconcilable differences between the two decisions. *See, e.g., McClain v. Lufkin Indus.*, 649 F.3d 374, 385 (5th Cir. 2011) ("This court's rule of orderliness prevents one panel from overruling the decision of a prior panel.").

14

No. 12-40165

interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a deprivation of this right is a violation *regardless of the employer's intent.*" *Smith*, 298 F.3d at 960 (emphasis added).[6] In the joint employment context, the Sixth Circuit has likewise noted that an "employer's intent is not directly relevant to the entitlement inquiry." *See Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008) (citing *Edgar v. JAC Prods.*, 443 F.3d 501, 507 (6th Cir. 2006)).

Applying these principles to this case, I would look to the substance of Cuellar's claim to determine whether it arises from the deprivation of an FMLA entitlement or from punishment exacted for her exercise of an FMLA right.[7] Here, Cuellar alleges that she was denied a substantive FMLA right:

---

[6] *See also Scruggs v. Carrier Corp.*, 688 F.3d 821, 825 (7th Cir. 2012) ("An interference claim does not require an employee to prove discriminatory intent on the part of the employer; rather, such a claim 'requires only proof that the employer denied the employee his or her entitlements under the Act.'" (quoting *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 443 (7th Cir. 2011))); *Stallings*, 447 F.3d at 1050 ("This court has recognized that an employee can prove interference with an FMLA right regardless of the employer's intent." (citation omitted)); *Colburn*, 429 F.3d at 332 ("[Our] approach to an FMLA claim of retaliation is to permit . . . the ultimate burden of proof [to remain] on the plaintiff . . . . *In contrast, employer motive plays no role in a claim for substantive denial of benefits.*" (emphasis added) (citations omitted)).

[7] It can be difficult to determine whether a claim arises from the denial of a substantive entitlement or, instead, from a theory of discrimination or retaliation, especially in the joint employment context. *See, e.g.*, Stacy A. Manning, *Application of the Interference and Discrimination Provisions of the FMLA Pursuant to Employment Termination Claims*, 81 Chi.-Kent L. Rev. 741, 748 (2006) ("The inconsistency as to which provision—and therefore which standard—to apply exists between the district and circuit courts, within the individual circuit courts, and among all of the circuit courts."). This is especially true when an employer terminates its employee's position during an FMLA-protected leave, as "both of the Prohibited Acts provisions are at issue . . . while some courts have concluded that an analysis of the interference provision governs this fact pattern, other courts have concluded that an analysis of the discrimination provision is appropriate." *Id.* at 742; *see also Colburn*, 429 F.3d at 330 ("Notably, however, there is no clear demarcation in § 2615 between what is 'interference' and what is 'discrimination,' and the terms overlap in some situations.").

No. 12-40165

reinstatement after maternity leave. Keppel Amfels emphasizes that, as a secondary employer, it had no obligation to provide reinstatement without a request from Perma-Temp. But Keppel Amfels *did* have a responsibility not to interfere with Cuellar's substantive FMLA right for Perma-Temp to make such a request. Indeed, that is the crux of Cuellar's § 2615(a)(1) claim: "Keppel Amfels'[s] actions . . . convinced both Perma-Temp and Cuellar it was fruitless to refer her back to Keppel Amfels for reinstatement." In my view, then, Cuellar need not prove intent to succeed on her § 2615(a)(1) claim and the district court's application of the *McDonnell Douglas* burden-shifting regime was improper. That said, I agree that Cuellar cannot state a genuine issue of material fact even absent an intent requirement. For this reason, I join fully in the court's opinion.